UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

CIVIL ACTION NO. 4:11-CV-00126-JHM

WILLIAM JUNGBLOM                                                                             PLAINTIFF

V.

HOPKINS COUNTY, KENTUCKY;
FRANK LATHAM, INDIVIDUALLY AND IN HIS
CAPACITY AS HOPKINS COUNTY SHERIFF; and
SCOTT TROUTMAN, INDIVIDUALLY AND IN HIS
CAPACITY AS AN OFFICER OF THE
HOPKINS COUNTY SHERIFF'S DEPARTMENT                                    DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant Scott Troutman's Summary Judgment Motion [DN 20]. Also before the Court is a Motion for Summary Judgment of Defendants Hopkins County, Kentucky; Frank Latham; and Scott Troutman [DN 22]. Fully briefed, this matter is ripe for decision. For the following reasons, the motions are **GRANTED**.

## I. BACKGROUND

On September 28, 2011, Plaintiff filed suit against Defendants in the Hopkins County Circuit Court, seeking recovery for malicious prosecution, unlawful arrest and imprisonment, and a violation of his constitutional rights under 42 U.S.C. § 1983. At Defendants' request, the case was removed to federal court. Plaintiff's claims arise from his arrest for the offenses of unlawful imprisonment and falsely reporting an incident. The arrest was based on an event that occurred November 8, 2009.

On November 8, 2009, Plaintiff's daughter had a girl friend spend the night at the Jungbloms' residence. The girls were in contact with Eric Logan and Ryan Morris, and they planned to sneak out of the house and meet the boys nearby. At some point, Plaintiff's wife discovered the

girls' plan and decided to wake up Plaintiff. Plaintiff took a flashlight and went outside to find the boys. According to the boys, Plaintiff threw a stick or a piece of wood in the road to stop their vehicle, at which point he directed them into the driveway. (Call Resp. Run Report [DN 26-2].) In his deposition, Plaintiff stated that he did not direct the boys into the driveway. (William Jungblom Dep. [DN 22-4] 36.)

According to Plaintiff, he then told the boys to get out of their vehicle. He also told them to get down on their knees, while he expressed his disappointment that they were on his property. (Id. at 23, 27.) Thereafter, Plaintiff called the police and reported that the boys were trespassing. (Id. at 29.) Deputy Ritchie Baldwin of the Hopkins County Sheriff's Department arrived at the scene and wrote the boys citations for criminal trespassing. (See Call Resp. Run Report [DN 26-2].) However, Deputy Baldwin was then informed by Eric Logan's father that Plaintiff had directed the boys onto his property. In his report, Deputy Baldwin states that Plaintiff admitted to engaging in such behavior and that due to his admission, he destroyed the citations. (Id.) The parties went their respective ways.

After this incident, there continued to be disagreements between the Jungblom and Morris families. In August of 2010, a criminal complaint was filed against Ryan Morris' mother, Mary Ann Morris, charging her with unlawful transaction with a minor in the third degree. This complaint was issued after Plaintiff's wife claimed that Morris contacted her daughter against her wishes. After the issuance of this complaint, Mary Ann Morris and her husband contacted Deputy Scott Troutman.[1] According to Deputy Troutman, since Plaintiff's family refused to leave the Morris family alone, the Morris family decided to press charges against Plaintiff for their son's unlawful imprisonment

---

[1] Deputy Troutman knew the Morris family, as he had coached a football team with Mr. Morris. (See William Jungblom Dep. [DN 22-4] 65.) According to Plaintiff, this relationship explains why Deputy Troutman got involved in the case.

2

on November 8, 2009. Deputy Troutman also contacted Eric Logan's parents, who indicated that they too wanted charges pursued. (See KYIBRS Report [DN 20-3] 4.)

Thereafter, Deputy Troutman contacted the Hopkins County Attorney's office regarding the possibility of bringing charges against Plaintiff for the incident that occurred on November 8, 2009. According to individuals in that office, Deputy Troutman was specifically advised that there was no probable cause to pursue such charges. (J. Todd P'Pool Dep. [DN 20-2] 23–25.) Deputy Troutman presents a different story, claiming that he contacted the office several times to inquire as to whether it would prosecute the case but was told that no decision had been made. (KYIBRS Report [DN 20-3] 7.) Regardless, it is clear that a couple of weeks after first taking the case to the County Attorney's office, Deputy Troutman took the case to the Commonwealth Attorney's office, who presented it to a grand jury. The grand jury returned a misdemeanor indictment against Plaintiff for two counts of unlawful imprisonment in the second degree and one count of falsely reporting an incident. An arrest warrant was subsequently issued for Plaintiff. Plaintiff was then arrested and incarcerated.

At this point, there were two criminal actions in litigation: one against Mary Ann Morris and the other against Plaintiff. These cases were heard together on October 21, 2010. At this hearing, the parties agreed to dismiss both cases with prejudice. According to Plaintiff, it was in both parties' best interest to do so. (William Jungblom Dep. [DN 22-4] 88.) Further, Plaintiff acknowledges that there were conversations about the dismissals depending on each other. (Id. at 56.) Plaintiff now claims that Deputy Troutman "engaged in an intentional and malicious course of action to prosecute [him] . . . ." (Compl. [DN 1-2] 2.) He also claims that Sheriff Latham and Hopkins County "failed to properly implement policies and procedures for the investigation and prosecution of potential criminal charges," resulting in Plaintiff's unlawful arrest and incarceration. (Id. at 4.) Defendants

3

filed summary judgment motions. The Court considers these motions below.

## II. STANDARD OF REVIEW

Before the Court may grant a motion for summary judgment, it must find that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of specifying the basis for its motion and identifying that portion of the record that demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-moving party must do more than merely show that there is some "metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The Federal Rules of Civil Procedure require the non-moving party to present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." Anderson, 477 U.S. at 252.

## III. DISCUSSION

### A. MALICIOUS PROSECUTION, UNLAWFUL ARREST AND IMPRISONMENT, 42 U.S.C. § 1983

For Plaintiff to succeed on a malicious prosecution claim, he must prove: "(1) the institution or continuation of original judicial proceedings, either civil or criminal . . . , (2) by, or at the instance, of the [defendants], (3) the termination of such proceedings in [the plaintiff's] favor, (4)

4

malice in the institution of such proceeding, (5) want or lack of probable cause for the proceeding, and (6) the suffering of damage as a result of the proceeding." Arnold v. Wilder, 657 F.3d 353, 365 (6th Cir. 2011) (citation omitted). Defendants argue that the Court must grant the summary judgment motions because Plaintiff failed to offer sufficient proof that probable cause was not established and because Plaintiff failed to demonstrate that the proceeding was terminated in his favor. The Court agrees.

### PROBABLE CAUSE

To prevail on his malicious prosecution claim, Plaintiff must prove that there was a lack of probable cause in the underlying action. Defendants argue that Plaintiff cannot carry this burden, as a Hopkins County grand jury indicted Plaintiff on his misdemeanor charges, thereby establishing probable cause. Plaintiff counters that he has carried his burden because the evidence presented to the grand jury was false, incomplete, and misleading—and because there was, in fact, no probable cause to institute proceedings against him. The Court substantially agrees with Defendants.

In this case, Plaintiff admits that a Hopkins County grand jury returned an indictment against him in a regularly scheduled session. In other words, Plaintiff admits that the grand jury was properly constituted. (William Jungblom Dep. [DN 22-4] 54–55.) It is a well-established rule that "the finding of an indictment, fair upon its face, by a properly constituted grand jury, conclusively determines the existence of probable cause for the purpose of holding the accused to answer." Higgason v. Stephens, 288 F.3d 868, 877 (6th Cir. 2002) (citation omitted). Here, there is no evidence that the indictment was facially invalid. Accordingly, there was probable cause. This finding is supported by Plaintiff's own deposition testimony, as he admitted that a grand jury has to have probable cause to return an indictment. (William Jungblom Dep. [DN 22-4] 60.) The Court thus concludes that Plaintiff's malicious prosecution claim is precluded as a matter of law. See Bates

5

v. Stapleton, 2008 WL 1735170, at *5 (E.D. Ky. Apr. 11, 2008) (noting that "when a properly constituted grand jury returns an indictment, it conclusively determines the existence of probable cause for arrest"); see also Barnes v. Wright, 449 F.3d 709, 716 (6th Cir. 2006) (recognizing the "preclusive effect of the indictment" on a malicious prosecution claim).

Plaintiff argues that the indictment's presumption of probable cause does not apply since the evidence presented to the grand jury was false, incomplete, and misleading. This argument is based on Ferguson v. City of Louisville, where the court held that if an officer obtains a warrant "through material false statements or in reckless disregard for the truth," that officer may be liable under 42 U.S.C. § 1983. 199 F. Supp. 2d 625, 627 (W.D. Ky. 2002). According to Plaintiff, Deputy Troutman can similarly be liable because he resurrected a case that had been previously been closed, attempted to bring charges against Plaintiff through the Hopkins County Attorney's office, and then chose to circumvent that office by going to the Commonwealth Attorney's office. Further, Plaintiff asserts that Deputy Troutman can be liable because he gave false, incomplete, and misleading information to the grand jury after being told that there was no probable cause to bring charges against Plaintiff.

The Court finds, however, that Plaintiff's argument is unpersuasive, as he has failed to offer any evidence showing that false, incomplete, or misleading statements relevant to the underlying probable cause determination were made to the grand jury.[2] Plaintiff has admitted that the

---

[2] When questioned about discrepancies in Deputy Troutman's testimony to the grand jury, County Attorney J. Todd P'Pool complained that the testimony was one-sided, failing to give all the history between the Jungblom and Morris families. (J. Todd P'Pool Dep. [DN 20-2] 14.) He also stated that Deputy Troutman improperly indicated that his office had a conflict with the Jungblom case. (Id.) Moreover, according to County Attorney P'Pool, Deputy Troutman failed to mention past dealings between the families and the County Attorney's office, (id. at 15), and made false remarks that the County Attorney's office would not get back to him, (id. at 23). Plaintiff mimics these complaints. (William Jungblom Dep. [DN 22-4] 71–73.) As Defendants correctly note, however, the complaints are irrelevant to the determination of probable cause since they have no bearing on the factual nature of the allegations presented to the grand jury. These discrepancies involve collateral matters. They do not affect the validity of the grand jury's probable cause determination.

6

description of the incident reported to the grand jury was based on the statements from the two victims. (William Jungblom Dep. [DN 22-4] 72.) The only piece of allegedly false testimony that Plaintiff highlights in its response relates to whether the County Attorney's office told Deputy Troutman that there was no probable cause. As to this testimony, the Court concludes that regardless of whether the County Attorney's office told Deputy Troutman its opinion regarding probable cause, he was fully within his right to take the case to the grand jury for an independent determination. The County Attorney's office admits as much. (J. Todd P'Pool Dep. [DN 20-2] 60.) Thus, the County Attorney's probable cause determination did not preclude Deputy Troutman from taking the case to the Commonwealth Attorney's office and the grand jury. Ultimately, the Commonwealth Attorney's presentment of the case to the grand jury, and the grand jury's return of the indictment, show that those bodies disagreed with the County Attorney's office. Because they specifically found probable cause, Plaintiff's action cannot be maintained. See Broaddus v. Campbell, 911 S.W.2d 281, 283 (Ky. App. 1995).

The Court's conclusion is supported by the fact that probable cause is simply a "reasonable ground for belief." Howell v. Sanders, 755 F. Supp. 2d 789, 791 n.1 (E.D. Ky. 2010). Due to this low threshold, Defendants will prevail if they show that there were reasonable grounds for believing that Plaintiff committed the charges under which he was indicted. Plaintiff was charged with unlawful imprisonment in the second degree. A person is guilty of this charge if he "knowingly and unlawfully restrains another person." Ky. Rev. Stat. § 509.030. Plaintiff was also charged with falsely reporting an incident. A person is guilty of this charge if he "[r]eports to law enforcement authorities an offense or indictment within their official concern knowing that it did not occur." Id. § 519.040.

By Plaintiff's own admissions, he told the boys to exit their vehicle and get on their knees.

7

(William Jungblom Dep. [DN 22-4] 23.) He also took their keys and cell phones so that they could not contact anyone or leave the scene. (Id. at 25–26.) Additionally, there is evidence that Plaintiff reported that the boys were trespassing despite directing them onto his property. (See Call Resp. Run Report [DN 26-2].) The Court finds that this was sufficient evidence to support the grand jury's probable cause determination. Indeed, there were reasonable grounds for believing that Plaintiff committed the charges under which he was indicted. Defendants' motions must be **GRANTED**.

The Court notes that its findings regarding probable cause apply equally to Plaintiff's claim for unlawful arrest and imprisonment, as well as his claim based on 42 U.S.C. § 1983. Thus, these claims also have no merit and Defendants' motions must be granted. With respect to Plaintiff's claim for unlawful arrest and imprisonment, the Court's finding of probable cause renders Defendants' acts proper. See Banks v. Fritsch, 39 S.W.3d 474, 479 (Ky. App. 2001) (noting that to succeed on a false imprisonment claim, the restraint must be "wrongful, improper, or without a claim of reasonable justification, authority, or privilege"). The same is also true as to Plaintiff's § 1983 claim. See Simms v. McDowell, 2009 WL 3160353, at *5 (W.D. Ky. Sept. 25, 2009) (granting summary judgment on the plaintiff's § 1983 claim since there was probable cause to arrest him and since he accordingly could not establish that he was deprived of his constitutional rights); see also Redding v. St. Edward, 241 F.3d 530, 532 (6th Cir. 2001) (noting that to state a claim under § 1983, a plaintiff must prove that he "was deprived of a right secured by the Constitution or laws of the United States").

### TERMINATION IN PLAINTIFF'S FAVOR

Even if there was not sufficient evidence to establish probable cause, the Court finds that Defendants' motions must still be granted, as Plaintiff has not proven that the underlying claim was terminated in his favor. As a general rule, dismissals by compromise are not considered terminations

8

favorable to the accused. <u>Broaddus</u>, 911 S.W.2d at 284. The Restatement (Second) of Torts § 660(a) conveys as much, providing that "[a] termination of criminal proceedings in favor of the accused other than by acquittal is not a sufficient termination to meet the requirements of a cause of action for malicious prosecution if the charge is withdrawn or the prosecution abandoned pursuant to an agreement of compromise with the accused." Indeed, because compromises leave open the question of guilt or innocence, a defendant cannot secure dismissal of charges by consenting to a compromise and then take advantage of the termination by claiming that it was in his favor. See <u>Broaddus</u>, 911 S.W.2d at 284. As Defendants correctly assert, this is exactly what Plaintiff is attempting to do here.

In this case, there were two criminal actions in litigation: one against Mary Ann Morris and the other against Plaintiff. These cases were heard together on October 21, 2010. At this hearing, the parties agreed to dismiss both cases with prejudice. According to Plaintiff, it was in both parties' best interest to dismiss. (William Jungblom Dep. [DN 22-4] 88.) Further, Plaintiff acknowledges that there were conversations about the dismissals of the cases depending on each other. (<u>Id.</u> at 56.) The Court thus concludes that the dismissal of Plaintiff's case cannot constitute a determination of its merits. Plaintiff's malicious prosecution claim must fail.

The Court notes that Plaintiff attempts to escape this conclusion by arguing that <u>Broaddus</u> is distinguishable from the present case. Plaintiff highlights that Broaddus stipulated that probable cause existed for the indictment and that the action was dismissed without prejudice. He then claims that since he did not make a stipulation, his claims can proceed. However, the fact that Broaddus stipulated to probable cause is irrelevant in determining whether a case was terminated on the merits. Instead, the key is that Broaddus "gave up something to secure the dismissal of the charges" and the dismissal "was not the unilateral act of the prosecutor." 911 S.W.2d at 284. Similarly, in this case, Plaintiff gave up the prosecution against Mary Ann Morris to secure the dismissal of his own

9

criminal case. The compromise, therefore, cannot be used to establish that the criminal action was terminated in Plaintiff's favor. Defendants' motions must be **GRANTED**.

### QUALIFIED IMMUNITY

Defendants also argue that they are entitled to qualified immunity. According to Defendants, public officials performing discretionary functions generally are shielded from liability for civil damages unless their actions violate the plaintiff's clearly-established constitutional rights. Russo v. City of Cincinnati, 953 F.2d 1036, 1042 (6th Cir. 1992); Howell, 755 F. Supp. 2d at 797. Plaintiff counters that Defendants are not entitled to qualified immunity because Deputy Troutman was told that there was no probable cause yet bypassed the County Attorney's office and offered misleading, false, and incomplete information to the grand jury. However, since the Court has found that Plaintiff failed to offer sufficient proof that probable cause was not established and failed to show that the proceeding was terminated in his favor, it is not necessary to consider these arguments.

### B. OFFICIAL CAPACITY CLAIMS

In his complaint, Plaintiff asserts claims against Hopkins County, Kentucky; Hopkins County Sheriff Latham, in his official capacity; and Deputy Troutman, in his official capacity. Filing suit against an individual in his official capacity is the equivalent of suing a government entity. Matthews v. Jones, 35 F.3d 1046, 1049 (6th Cir. 1994). Thus, Plaintiff's claims against Sheriff Latham and Deputy Troutman in their official capacities are actually claims against Hopkins County, Kentucky. For Hopkins County to be liable, Plaintiff must prove that the allegedly unconstitutional actions are the result of the municipality's policy or custom. See Sova v. City of Mt. Pleasant, 142 F.3d 898, 904 (6th Cir. 1998); Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978). Also, there must be a direct causal link between the policy and the alleged constitutional violation so that the government entity's deliberate conduct can be deemed the "moving force"

behind the violation. See Radvansky v. City of Olmsted Falls, 395 F.3d 291, 311 (6th Cir. 2005).

Plaintiff argues that Hopkins County is liable for the violations of Plaintiff's constitutional rights because it was the Sheriff Department's policy to have all case reports reviewed and there was no review of Deputy Baldwin's report. (Ritchie Baldwin Dep. [DN 26-2] 21–22; Frank Latham Dep. [DN 22-5] 27–29.) But as the Court has discussed above, Plaintiff has not proven a constitutional violation. Likewise, Plaintiff has not alleged that an unconstitutional policy is at play. Consequently, Defendants are shielded from liability. See Wren v. Richardson, 2008 WL 2166531, at *3 (E.D. Ky. May 22, 2008) (finding that "[a] § 1983 claim against a municipality requires the court to address two steps: first, whether the 'plaintiff's harm was caused by a violation'; and second, 'if so, whether the city is responsible for that violation'").

The Court notes that Defendants also argue that they are entitled to immunity in this case. See generally Yanero v. Davis, 65 S.W.3d 510 (Ky. 2001); Commw. of Ky. v. Harris, 59 S.W.3d 896 (Ky. 2001). However, because the Court has found that Plaintiff failed to offer sufficient proof that he was harmed by a constitutional violation, it is not necessary to consider this argument.

### C. SUPERVISORY LIABILITY

In his complaint, Plaintiff also appears to suggest that Sheriff Latham is responsible in his capacity as Deputy Troutman's supervisor. (See Compl. [DN 1-2] 4.) However, as Defendants assert, the doctrine of respondeat superior does not apply in § 1983 actions so as to impute liability to those in supervisory capacities. Monell, 436 U.S. at 691. Instead, the liability of supervisory personnel must be based on more than merely the right to control an employee. Hays v. Jefferson Cnty., Ky., 668 F.2d 869, 872–74 (6th Cir. 1982). The Sixth Circuit has held that supervisory liability must be based on active unconstitutional behavior. It cannot be based on a mere failure to act. Shehee v. Luttrell, 199 F.3d 295, 300 (6th Cir. 1999). Here, Plaintiff has not shown active

11

unconstitutional behavior on behalf of Sheriff Latham. To the contrary, testimony indicates that Sheriff Latham was not involved in the investigation, grand jury presentation, arrest, or prosecution of Plaintiff. (Frank Latham Dep. [DN 22-5] 5, 8, 15–17.) Plaintiff has offered no evidence suggesting otherwise. Thus, to the extent that Plaintiff bases his claims on respondeat superior, the Court finds that they fail.

## IV. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that Defendant Scott Troutman's Summary Judgment Motion [DN 20] is **GRANTED**.

**IT IS FURTHER ORDERED** that the Motion for Summary Judgment of Defendants Hopkins County, Kentucky; Frank Latham; and Scott Troutman [DN 22] is **GRANTED**.

*Joseph H. McKinley*

**Joseph H. McKinley, Jr., Chief Judge**
**United States District Court**

March 20, 2013

cc: counsel of record